393 A.2d 680

Brian T. SCALES

v.

SHEFFIELD FABRICATING AND MACHINE COMPANY a/k/a Sheffield Fabricating and Machine Corporation, Appellant.

Superior Court of Pennsylvania.

Argued April 13, 1978.

Decided Oct. 20, 1978.

John Alan Havey, and Havey & Neff, Aliquippa, for appellant.

J. Frank Kelker, Jr., and Kelker & Kelker, Rochester, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

JACOBS, President Judge:

Appellant has taken this appeal from the entry of a judgment against it in the amount of $6,291. The only issue to be decided is whether Judge SALMON properly directed a verdict in favor of appellee because of appellant's failure to admit or specifically deny the averments of the complaint. For the reasons stated below, we affirm in part and reverse in part.

Appellee, a mechanical design engineer, brought this suit in assumpsit asserting his status as an intended third party beneficiary under an agreement executed by the Commonwealth of Pennsylvania and appellant. The contract, dated April 4, 1973, provided that the Pennsylvania Department of Commerce would make a grant of $20,000 in consideration for appellant's production of a full-scale model of an improved "radial truck"[1] previously designed by appellee.

Attached to the contract, and incorporated by reference therein, was a proposal signed by appellant's president, Anthony J. Pecora, and by appellee. The proposal clearly stated that appellee was to be in charge of all engineering work necessary to develop the improved "radial truck" and that of the $20,000 grant, $10,000 was to be used for engineering, design, research and development, and testing. *See* record at 23a and 24a. It was on the basis of this proposal that the parties to the contract, which was also signed by Mr. Pecora, entered into their agreement.

In signing the contract and accepting the grant from the Commonwealth, appellant impliedly promised to pay appellee up to $10,000 (100 man days at $100 per day) for

1. The "radial truck" is an improved undercarriage for railroad freight cars.

engineering and development. Appellee, as the dissent agrees, was therefore entitled to sue on the contract as an intended third party beneficiary.

A dispute arises, however, with regard to whether appellant properly availed itself of Pa.R.C.P. 1029(c) in answering both the complaint and the amended complaint.[2] Rule 1029(a) provides that a responsive pleading shall admit or deny the averments of fact contained in the pleading to which it responds. Averments in a pleading which are not specifically denied are deemed to be admitted unless the exception set forth in Rule 1029(c) comes into play. *See* Pa.R.C.P. 1029(b).

The language of Rule 1029(c) may be employed, however, only if the pleader demands proof of the averments to which he is responding and states *either* that after reasonable investigation he is without information sufficient to form a belief as to the truth of the averment *or* that he is without such information because the means of proof are within the exclusive control of the adverse party. *See* Pa.R.C.P. 1029(c). As to the averments of fact contained in paragraph 5 of the complaint, appellant could not properly utilize the narrow exception formulated in Rule 1029(c).[3]

**2.** Mr. Anthony Pecora, appellant's president, swore to the answer filed by appellant. Record at 93a. He was thus personally involved with both the signing of the contract and the ensuing litigation.

**3.** Appellant's misconception of the manner in which Rule 1029(c) is to be used becomes even more apparent when the averments of paragraphs 3 and 4 of the complaint are examined. Paragraph 3 stated that, "[T]he said Defendant corporation received a grant from the Department of Commerce . . . as evidenced by agreement dated April 4, 1973, a copy of which is attached hereto and marked as Exhibit A, to produce two full size radial trucks for railroad freight cars as designed by the Plaintiff." Record at 3a.

Paragraph 4 stated that, "[A]ccording to the terms of the Agreement, Plaintiff, Brian T. Scales', contribution to the project was the value of engineering already carried out by him in the amount of Twenty Thousand Dollars ($20,000.00)." Record at 4a.

Although these averments were fully supported by the proposal *signed by appellant's president* and attached to the complaint, appellant used the language of Rule 1029(c), denying the averments "in that after reasonable investigation he is without knowledge or infor-

When it is obvious as it is here, that the information necessary to formulate a specific denial is neither within the exclusive control of the adverse party nor unascertainable after reasonable investigation, the court ought to ignore the 1029(c) averment. *Delaware Valley Carpeting v. Leicht*, 73 D. & C.2d 51, 53 (C. P. Bucks 1975), *aff'd per curiam* 234 Pa.Super. 754, 342 A.2d 419.

Paragraph 5 contains the following averment:

5. That in addition to the Defendant corporation producing two radial trucks as aforesaid, Brian T. Scales was to be employed by the Defendant corporation for engineering, design, research, development and testing for a minimum of one hundred (100) man days at One Hundred Dollars ($100.00) per day totalling Ten Thousand Dollars ($10,000.00). While the Plaintiff performed the work, he has only been paid the sum of Five Thousand Dollars ($5,000.00) of that amount.

Record at 4a.

To this appellant made a general denial using the language of Rule 1029(c). We agree with the lower court that it is "incredible that [appellant] as a party to said documents (contract and proposal) and the party responsible for carrying out the building of the prototype should be so completely ignorant of what transpired . . . as to be unable to answer the clear and simple allegations of the Complaint." Record at 96a.[4]

mation sufficient to form a belief as to the truth of the averment and proof thereof is demanded at trial of this case." Record at 50a.

4. Unlike the dissent, we believe that this could be determined from the pleadings above.

In Pennsylvania pleadings are conclusive in the actions in which they are filed. *Philadelphia v. Kenny*, 28 Pa.Cmwlth. 531, 369 A.2d 1343 (1977), *citing Ham v. Gouge*, 214 Pa.Super. 423, 257 A.2d 650 (1969). Since appellant improperly utilized Rule 1029(c), the averments of paragraph 5 were deemed to be admitted, *see* Pa.R.C.P. 1029(b), and no issue of fact with regard to paragraph 5 remained to go to the jury.

The situation of appellant's president, Mr. Anthony Pecora, is similar to that of the treasurer in the following example given in Goodrich-Amram 2d:[5]

> For example, if the treasurer of a corporation were sued by a creditor of the corporation upon a personal guaranty of the corporate debt, and the plaintiff averred the exact amount of the indebtedness of the corporation to him as shown in its books, the treasurer, who has the physical custody of the books and is responsible for the fiscal affairs of the corporation, could not plead no knowledge of the truth of the averments of corporate indebtedness, or that he had made a "reasonable investigation" and could not ascertain the truth. Such an averment would be inherently incredible and untrue. The same ruling should be made in interpreting Rule 1029(c) which repeats the language that the defendant "shall not be required to state what investigation he had made."

Goodrich-Amram 2d § 1029(c):1 at 279 (footnote omitted). Here Mr. Pecora was intimately involved in all stages of the transaction under scrutiny, from the signing of the proposal *and* the contract to executing the jurat to appellant's answer. An answer which states, using the Rule 1029(c) formulation, that appellant and its corporate president were unable after reasonable investigation to determine whether appellee had been paid only $5,000 or the $10,000 due him by appellant under the contract is classically and inherently incredible. All appellant and its president had to do was scrutinize the contract and the corporate records.

The lower court properly deemed this response to constitute an admission for failure to admit or specifically deny the averments of paragraph 5. *See* Pa.R.C.P. 1029(b). There was thus no unresolved issue of fact with regard to

---

5. We are unable to understand the dissent's conclusion that this analogy is unwarranted. Admittedly the treasurer of a corporation has custody of the corporate accounts but he works for the President who has immediate access to such accounts.

paragraph 5 and, therefore, the lower court properly directed a verdict in the amount of $5,000.[6]

█ The remaining $1,291 of the verdict was improperly entered. Paragraph 7 of appellee's complaint and paragraph 2 of his amended complaint alleged that appellee had incurred certain expenses in the amount of $1,291 as a result of appellant's abandonment of the "radial truck" project. The Rule 1029(c) formulation was permissibly used to answer paragraph 7 since nothing in the record suggests that appellant knew or should have known the types or amounts of expenses incurred by appellee.

The order of the lower court is affirmed as to paragraph 5 of the complaint. The case must be remanded for trial, however, on the issue of the expenses allegedly incurred and listed in paragraph 2 of the amended complaint.

SPAETH, J., files a concurring and dissenting opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

Appellee brought suit for $10,958. The complaint divided this claim into five items. By his amended complaint appellee withdrew one item of $2,000, and another of $167; at trial he withdrew a third item of $2,500. That left $6,291, made up of an item of $5,000 for engineering services, and $1,291 for expenses. The lower court ruled that appellant's answer to the amended complaint was ineffective to deny appellee's claim for both of these items, and therefore directed the jury to return a verdict in appellee's favor in the amount of $6,291. As to the $5,000 claim, the majority affirms; as to the $1,291 claim, it reverses, and orders a new trial. In my opinion we should reverse and order a new trial

6. The lower court did not abuse its discretion in denying appellant's request to amend the answer to include specific denials of the items in question. The grant or denial of a request for amendment is within the court's discretion; the right to amend is not absolute and may be denied when necessary, as here, to prevent dilatory tactics. *See* Goodrich-Amram § 1033:1 at 346.

as to both claims. In support of this opinion, I should like to offer two arguments.

1

Appellee's suit is based on a written agreement, a copy of which appellee attached to his complaint. The agreement was between appellant and the Commonwealth of Pennsylvania. By the agreement appellant undertook to design and develop a better truck for railroad freight cars. The agreement stated that appellee would be responsible for "[e]ngineering, design, r and d, testing" at the rate of "100 man days at $100/day," or $10,000. R. 24a. Paragraphs, 3, 4, and 5 of appellee's complaint alleged these facts; paragraph 5 also alleged that "[w]hile [appellee] performed the work, he has only been paid the sum of Five Thousand Dollars ($5,000.00) of that amount [i. e., of the $10,000 promised]." Appellant answered each of these paragraphs of the complaint as follows:

Paragraph 3 [4, and 5] is denied in that after reasonable investigation, he [sic; appellant is a corporation] is without knowledge or information sufficient to form a belief as to the truth of the averment and proof thereof is demanded at trial of this case.

In answering in this manner, appellant copied the formula stated in Pa.R.Civ.P. 1029(c), which provides in part that

[a]n averment shall be deemed to be denied if proof thereof is demanded and the pleader states   .   .   .
that after reasonable investigation he is without knowledge or information sufficient to form a belief as to the truth of the averment   .   .   ..

In explaining why it held appellant's answer insufficient, the lower court noted that both the agreement between appellant and the Commonwealth and the answer to appellee's complaint had been signed by appellant's president. "It seems to us incredible," said the court, "that [appellant] as a party to said documents and the party responsible for carrying out the building of the prototype should be so completely ignorant of what transpired in that process of

construction as to be unable to answer the clear and simple allegations of the Complaint." R. 96a. The majority expresses its agreement with this statement, quoting from—as did the lower court—a passage from Goodrich-Amram to the effect that the treasurer of a corporation, who had custody of the corporation books and was responsible for its fiscal affairs, could not credibly plead that after a reasonable investigation he had no knowledge of the corporation's debts. Majority Opinion at 682–683.

I submit that the passage from Goodrich-Amram does not support the majority's position but rather demonstrates its error. As the passage makes plain, the question is: Can it be determined *from the pleadings alone* that the defendant's statement is incredible? In the example of the corporate treasurer, the answer is that it can be so determined. In the present case, however, the answer is that it cannot be so determined. The president of a corporation, who has signed an agreement promising that the corporation would undertake certain work, may or may not be in a position to know whether the work has been done. To appraise the president's position one must know the answer to such questions as: Where was the work to be done? What reports of it were to be made? In what form were the results of the work manifested? The lower court could not, and the majority of this court cannot, know the answer to any of these questions. If in fact appellee did work 100 hours, where did he do it? And when? And did he ever give appellant any evidence of his work, such as time sheets? If these questions referred to the work or responsibilities of one of appellant's officers or employees—in other words, to someone arguably comparable to a corporate defendant's treasurer—then it might be said that the president was in a position to know the answer to the questions, and his denial of knowledge was therefore incredible. However, here there is no suggestion that appellee was either an officer or employee of appellant, or in any way under appellant's supervision or control.

In fact, the matter may be stated more strongly: To the extent that any conclusion can be drawn from the pleadings, it is that appellee was not under appellant's supervision or control, and that whatever work he did do was done on his own, away from appellant's premises, and without consultation with appellant. In these circumstances, the denial by appellant's president of knowledge would be not only credible but to be expected.

The indication that appellee worked on his own, and not on appellant's premises or under its supervision or control, derives from appellee's claim for expenses. Paragraph 7 of appellee's complaint alleged:

> That the Defendant abandoned the project and failed to carry out the contract so that it was necessary for the Plaintiff to obtain other manufacturers to complete the same. That the cost of the completion of the work left unfinished was One Thousand Two Hundred Ninety-one Dollars ($1,291.00).

In response to appellant's preliminary objections in the nature of a motion for more specific pleading—an objection that the lower court sustained—appellee filed an amended complaint, alleging:

> Paragraph 7 of the Plaintiff's Complaint is amended pursuant to Preliminary Objection No. 6. The Plaintiff incurred the following expenses:

| | |
|---|---:|
| (a) Ciccone Welding | $ 845.20 |
| (b) J. C. Moore Industries | 220.00 |
| (c) DeBolt Transfer, Inc. | 55.00 |
| (d) Bearings, Inc. | 6.62 |
| (e) Bearings and Transmission, Inc. | 31.03 |
| (f) Gilbert Iron and Steel | 80.03 |
| (g) Glenn Machine Company | 45.00 |
| (h) Roy H. Mecklem | 8.41 |
| | $ 1291.29 |

See statements attached hereto and marked Exhibit "A". R. 43a.

The Exhibit "A" thus referred to is reproduced in the record. R. 45a–49a. It includes: six invoices, each addressed to appellee at his home address; two checks, each drawn to

Ann L. Scales (presumably appellee's wife) on her bank account; two receipts, each by a lumber, hardware and building supply firm, addressed to no one but acknowledging payment in cash; one receipted bill for items "Sold To" appellee (no address stated); and finally a receipted bill for a cash sale, with an address on it but no name identifying whose address it is. It therefore appears that appellee worked out of his home, and made purchases on his own, without consultation with appellant. The majority acknowledges that it was proper, *i. e.*, credible, for appellant's president to say that after investigation he did not know about appellee's expenses. This acknowledgment, it seems to me, should carry the majority to the further conclusion that so was it credible for appellant's president to say that after investigation, neither did he know about appellee's services.

### 2

A second argument also leads to the conclusion that the new trial should not be limited to appellee's claim for expenses but should extend also to appellee's claim for services.

In arguing that appellant's answers were insufficient, appellee's counsel stated to the lower court that he was "ask[ing] for judgment on the pleadings." R. 85a. Appellant's counsel first objected—properly—that a motion for judgment on the pleadings should not be made after the jury was sworn and after the plaintiff's opening statement. *Id.* When the court responded that it did not agree "with your analysis of the situation," *id.*, appellant's counsel asked leave "at this time to amend the Answer so as to include specific denials of the items in question." R. 86a. Appellee's counsel objected, and the court sustained the objection. *Id.* This, in my opinion, represented an abuse of discretion:

When the nature of the claim and the defense is such that it is likely that Rule 1029(c) applies, the court will give the defendant leave to amend and will not give judgment on the pleadings.

Goodrich-Amram, *supra*, at p. 281.

Unless the other party will be prejudiced, leave to amend should be liberally granted. *Id.* § 1033:1.

In response to this argument the majority says that the lower court did not abuse its discretion because "the right to amend is not absolute and may be denied when necessary, as here, to prevent dilatory tactics." Majority Opinion at 683, footnote 6. One difficulty with this response is that it depends upon the assumption that appellant was engaged in "dilatory tactics"; for reasons I have just discussed, that assumption is, I believe, unwarranted. There is a further difficulty, however. It seems to me that the parties have been dealt with unevenly. A strict view has been taken of appellant's practice, but a lenient view of appellee's. If appellee had been dealt with as strictly as appellant, his motion for judgment on the pleadings would have been denied as too late. Why should appellant's request to amend be denied, but appellee's motion for judgment on the pleadings be construed as a motion for directed verdict? At least, why should not appellant's request to amend be allowed now? No doubt the lower court thought that a trial would be avoided, and time therefore saved, by denying appellant's request to amend. In fact, however, the lower court was in error, for a trial will be necessary after all, at least as to appellee's claim for expenses. Given this fact, would it not be the fairer course to permit appellant to amend its answer, and order that the trial proceed on both the claim for expenses and the claim for services? I think it would be.

Accordingly, I should reverse and remand to the lower court with instructions to permit appellant to amend its answer, after which the case should proceed to trial.